UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| GILBERT ANGULO, | ) No. ED CV 12-01426-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for a Period of Disability and Disability Insurance Benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

```
1              considered the opinions of medical expert Dr. Sparks (JS at
2              7-14);
3         2.   Whether the ALJ properly found medical improvement after
4              April 6, 2006 (JS at 18-23); and
5         3.   Whether the ALJ gave proper consideration to Plaintiff's
6              testimony (JS at 27-33).
```

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.  After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed, and the matter remanded for a new hearing.

**I**

**BACKGROUND**

On November 28, 2005, Plaintiff filed for a Period of Disability and Disability Insurance Benefits for back pain and spinal injury. (AR 54, 116.)  Plaintiff claimed an alleged onset date of September 13, 1999, and the Date Last Insured ("DLI") was December 31, 2004. (AR 54, 104.)  After the agency rejected Plaintiff's application initially and upon reconsideration, a hearing was held before ALJ Belcher on October 16, 2007.  (AR 54.)  On November 28, 2007, ALJ Belcher issued an opinion finding that Plaintiff was not disabled through the DLI.  (AR 60.)  Plaintiff appealed the decision to this Court, and the Court remanded on the grounds that ALJ Belcher did not address an inherent contradiction in medical expert Dr. Sparks' testimony that Plaintiff both met a listing for disorders of the spine

and had a sedentary Residual Functional Capacity ("RFC").[1] (AR 57, 503-09.) See also Angulo v. Astrue, No. CV 08-05149-VBK, 2009 WL 1160080 at *2-3 (C.D. Cal. April 24, 2009) ("Angulo I").[2] In its memorandum opinion and order, the Court detailed what the ALJ had to do on remand:

> There is a clear and obvious contradiction between [Dr. Sparks]'s testimony that Plaintiff meets a Listing, and his later testimony that Plaintiff has an RFC which would negate a finding of disability. . . . In the case of an obvious and fundamental contradiction, such as is presented by this testimony, the Court finds that the ALJ was under a duty to clarify the contradiction, in order to determine the ME's ultimate opinion, and the basis for it. The failure to do that constitutes reversible error, and this matter will be remanded for further hearing consistent with this decision.

(AR 508.)

The Court also noted that since, on remand, the entire medical record should be considered, Plaintiff's credibility needed to be reevaluated based on de novo review, so it need not reach Plaintiff's

---

[1] A RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[2] For purposes of brevity, the Court will not reiterate Plaintiff's extensive medical treatment history, as that has been sufficiently summarized in Angulo I. The Court only adds that since then, Plaintiff has continued to see Dr. Haider, his treating physician, and his complaints of back pain remain. (AR 414, 615, 609, 604, 602-03, 598, 596). In addition, Dr. Haider has reported restricted motion, spasms, difficulty changing positions, difficulty walking, among other symptoms. (See, e.g., AR 410, 414, 607, 600).

1  second issue, which asserted that the ALJ gave improper consideration
2  to Plaintiff's testimony.  (AR 504, 508.)
3       On remand, newly assigned ALJ Radensky held a hearing on November
4  23, 2009 at which another medical expert, Dr. Lorber, testified over
5  the telephone.  (AR 458.)  Dr. Lorber summarized Plaintiff's treatment
6  record, and he concluded that Plaintiff met the listing during two
7  periods of time: September 13, 1999 to May 4, 2002, and April 6, 2005
8  to April 6, 2006.  (AR 462-64.)  Otherwise, he opined that Plaintiff
9  had a sedentary RFC.  (AR 464.)
10      On January 21, 2010, ALJ Radensky issued a decision finding that
11 Plaintiff was disabled from September 14, 1999 to May 4, 2002 and from
12 November 4, 2004 to April 6, 2006.  (AR 451.)  The ALJ also concluded
13 that between May 5, 2002 to November 3, 2004 and from April 7, 2006
14 onward, Plaintiff's condition improved with respect to his ability to
15 work, and he was not disabled during those periods. (AR 451.)  He
16 explicitly adopted Dr. Lorber's finding that outside of the periods of
17 disability, Plaintiff had what amounts to a sedentary RFC. (AR 447.)

### DISCUSSION

### I

### THE ALJ PROPERLY CONSIDERED THE OPINIONS

### OF MEDICAL EXPERT DR. SPARKS

23      Plaintiff's first claim is that on remand, ALJ Radensky did not
24 properly consider the opinions of Dr. Sparks, the medical expert from
25 the first administrative hearing, as required under <u>Angulo I</u>.  (<u>See</u> JS
26 at 7-13.)  Specifically, Plaintiff asserts that the decision violates
27 the rule of mandate because ALJ Radensky failed to mention, much less
28 synthesize, Dr. Sparks's testimony into his decision.  (JS at 13.)  In

4

response, the Commissioner argues that Dr. Lorber, the medical expert on remand, came up with a reasonable rationale that detailed two discrete periods of Plaintiff's medical history that coincided with Dr. Sparks's assessments, while also supporting a closed period of disability. (JS at 16.) Furthermore, the Commissioner claims that ALJ Radensky's decision is supported by substantial evidence.

A federal district court may disturb the ALJ's decision only if it contains legal error or if it is not supported by substantial evidence.[3] 42 U.S.C. § 405(g). Therefore, the ultimate question is whether ALJ Radensky's decision is supported by substantial evidence or whether it contains legal error. This Court finds that although ALJ Ralenksy failed to mention Dr. Sparks's opinions from the first hearing in his decision, his reliance on Dr. Lorber's testimony is free of legal error.

Plaintiff seems to argue that ALJ Radensky committed legal error and cites to Quern v. Jordan, 440 U.S. 332, 347 n. 18 (1979) for the rule of mandate doctrine, which requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision. See also Ischay v. Barnhart, 383 F.Supp.2d 1199, 1215-1219 (C.D. Cal. July 25, 2005) (explicitly applying the doctrine to the social security context when a district court remands a case back to the ALJ). Plaintiff contends, then, that ALJ Radensky's failure to cite to Dr. Sparks's opinions or grapple with the contradictions in his testimony violates the rule of mandate based on this Court's remand order. (See JS at 13, AR 507-08.)

---

[3] Substantial evidence is defined as "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

When it remanded the case, this Court found that "the ALJ was under a duty to clarify the contradiction, in order to determine [Dr. Sparks's] ultimate opinion, and the basis for it." (AR 508.) However, deeper analysis reveals at least two reasons why Plaintiff's rule of mandate argument fails.

First, a proper reading of Angulo I is that when an ALJ *adopts* an medical expert ("ME")'s inherently contradictory opinions to support his findings, he cannot parse the doctor's testimony "so as to accept part of the testimony, and reject the contradictory part, without an appropriate explanation." (AR 508.) Here, however, there is no indication that ALJ Radensky relied upon Dr. Sparks's opinion in reaching his decision. In fact, he does not mention Dr. Sparks at all and instead relies on Dr. Lorber's testimony to make his findings. (See AR 447.) A fair reading of Angulo I is counterintuitive to the notion that an ALJ must determine the ultimate opinion of an ME who did not testify at his hearing and upon whose opinion he did not rely. This is especially true when the ALJ found the testimony of the ME who did testify at the hearing over which he presided more persuasive. The ALJ is responsible for resolving ambiguities in the medical evidence. Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008). Furthermore, the ALJ need not accept any medical opinion that contains inconsistencies and ambiguities. Bunnell v. Sullivan, 947 F.2d 341, 348 (9th Cir. 1991). Here, ALJ Radensky's opinion can reasonably be read as a rejection, albeit silent, of Dr. Sparks's opinions in favor of Dr. Lorber's testimony. An ALJ is "not required to discuss every piece of evidence," and "is not required to discuss evidence that is neither significant nor probative." Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) (quoting Howard ex rel. Wolff v.

Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)).

The leading rule of mandate case in the Social Security context is easily distinguishable from this instant case. In Ischay, 383 F.Supp.2d 1199, to which Plaintiff cites (see JS at 13), the court found that the ALJ violated the rule of mandate on remand by taking evidence on matters beyond the single issue identified in the court's order, which was solely to re-determine whether the claimant was disabled at step five of the sequential evaluation. Ischay, 383 F.Supp.2d at 1219, 1223. Subsequent Social Security cases applying Ischay and the rule of mandate doctrine have done so under similar circumstances. See, e.g., Coto v. Astrue, 2008 WL 4642965 at *5 (C.D. Cal. Oct. 20, 2008) ("[T]he ALJ's decision to reconsider plaintiff's RFC in this regard, and ultimately find that plaintiff has a greater capacity for standing and walking, was not related to the issues on remand."); Sanchez v. Astrue, 2012 WL 3704756 at *13 (C.D. Cal. Aug. 27, 2012) (ALJ's decision exceeded scope of remand because ALJ was only to explain step five discrepancy and impermissibly revisited claimant's RFC at step four). Here, the Court's remand order was not as narrowly written as those in cases where Ischay has been applied. In fact, the Court included broad language in the order, indicating that "on remand, the entire medical record should be considered." (AR 508.) This language cannot be read so narrowly as to require ALJ Radensky to interpret Dr. Sparks's testimony when ALJ Radensky did not use it in reaching his opinion.[4] Therefore, the Court finds that ALJ

---

[4] To the extent that Plaintiff argues ALJ Radensky engaged in impermissible "expert shopping" by holding hearings until he found an expert who agreed with his conclusions (see JS at 17-18), this argument is unavailing. In cases where an ALJ is found to have engaged in expert shopping, there tend to be a series of hearings.
(continued...)

7

Radensky did not violate the rule of mandate and that there was no legal error.

Second, Plaintiff's argument is unconvincing because Dr. Lorber's and Dr. Sparks's opinions are actually similar and reconcilable. As the Commissioner persuasively argues, Dr. Lorber's testimony reasonably served to reconcile the ambiguous and conflicting evidence presented by Dr. Sparks because both Dr. Sparks and Dr. Lorber found Plaintiff met Listing 1.04, and Dr. Lorber was able to place into context Dr. Sparks's seemingly contradictory opinions that, despite meeting the Listing, Plaintiff could perform a limited range of light work prior to December 2004 and sedentary work after December 2004. (JS at 16.)

Dr. Sparks testified that Plaintiff met a Listing as of December 13, 2004 and continued to meet it as of the hearing date on October 16, 2007. (AR 20-21.) He also opined that Plaintiff had a light RFC before December 2004 and a sedentary RFC after December 2004. (AR 25-26.) Dr. Lorber testified that from September 13, 1999 to May 4, 2002 and from April 6, 2005 to April 6, 2006, Plaintiff met the Listing.[5] (AR 462-64.) For periods during which Plaintiff did not meet the Listing, Dr. Lorber found that he had a sedentary RFC. (AR 464.) Essentially, Dr. Lorber's opinions included periods in Plaintiff's

---

[4](...continued)
See, e.g., Ischay, 383 F.Supp.2d at 1210 (four hearings). The present case presents only two.

[5] The Court notes that ALJ Radensky actually did not adopt Dr. Lorber's findings in their entirety. He explicitly credited Plaintiff's allegations of pain beginning November 4, 2004 in light of supporting medical records, so he found that Plaintiff's second period of disability began on November 4, 2004 and ran until April 6, 2006, beginning about five months earlier than Dr. Lorber's assessment. (AR 448, 451.)

medical history that satisfied Dr. Sparks's sedentary RFC finding (May 5, 2002 to April 6, 2005, and April 6, 2006 to the present) and periods during which Dr. Sparks's finding that Plaintiff met a Listing applied (September 13, 1999 to May 4, 2002, and April 6, 2005 to April 6, 2006).[6]

In conclusion, the Court finds that ALJ Radensky's decision does not violate the rule of mandate and is free of legal error.

## II
### THE ALJ IMPROPERLY FOUND MEDICAL IMPROVEMENT AFTER APRIL 5, 2006

Plaintiff argues that ALJ Radensky improperly found medical improvement after April 2006 and summarizes Plaintiff's extensive treatment record from 2006 to 2010. (See JS at 18-21.) In response, the Commissioner contends that Plaintiff merely offers a contrary interpretation of the evidence and that under such circumstances, this Court must uphold the agency's decisions. (See JS at 26.)

As the Court explained earlier, the ALJ's decision can only be disturbed if it contains legal error or it is not supported by substantial evidence. 42 U.S.C. § 405(g). The Court is convinced that the ALJ's finding that Plaintiff improved after April 6, 2006 does not rest on substantial evidence.

In order to find that disability ceased, there must be a finding of medical improvement related to the ability to engage in work activity. 20 C.F.R. § 404.1579(a)(2). When finding that Plaintiff's

---

[6] The Court also finds that the two experts' opinions are not necessarily as different as Plaintiff characterizes. For example, both found the same RFC, and they agree that Plaintiff at the very least met the Listing from April 6, 2005 to April 6, 2006. In addition, both testified that Plaintiff experienced improvement after surgery. (AR 23, 463-64.)

9

1  condition had improved since April 2006, ALJ Radensky wrote:
2      More recently, Dr. Haider noted a pleasant affect,
3      [Plaintiff] in no distress and remaining permanent and
4      stationary. Medications were admittedly beneficial and no
5      assistive device was required for ambulation. [cite to
6      exhibit] Reflexes are intact, strength full, and treatment
7      conservative. [Plaintiff]'s condition has again stabilized
8      and he tolerates his medications. [cite to exhibit]
9  (AR 449.)

11    However, ALJ Radensky misstated the record. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ cannot attempt to justify decision by ignoring competent evidence in the record that suggests an opposite result). For example, he noted that Plaintiff required no assistive device for ambulation and cited to Dr. Haider's reports dated October 2, 2006 and November 28, 2006. (AR 417, 420.) The same report indicated that Plaintiff had difficulty walking, changing position, and getting onto the examining table. It also indicated that Plaintiff had tenderness in the lumbar region, restricted motion, antalgic gait, muscle spasm, and painful symptoms. (AR 417, 420.) In addition, one later report by Dr. Haider shows that Plaintiff required the assistance of a walker on January 23, 2007 (AR 414), and the same report and others dated March 6, 2007 and May 1, 2007 find the same symptoms and pain complaints. (AR 410-414.) Finally, Dr. Haider prescribed Plaintiff a walking cane on February

10

10, 2010.[7] (AR 436-37.)

Further, ALJ Radensky incorrectly concluded that Plaintiff's condition had stabilized and that he tolerated his medications. Even on first glance, these reasons do not necessarily relate to medical improvement related to Plaintiff's ability to work. Second, ALJ Radensky's support for this conclusion comes from Dr. Haider's reports dated September 12, 2007 to September 9, 2009, but after reviewing these reports, the Court finds that there is no indication Plaintiff's condition improved in relation to his ability to do work. These reports continue to indicate that Plaintiff demonstrated an antalgic gait, experienced difficulty walking and changing positions, and presented restricted motion, tenderness in the spine, and muscle spasms. (AR 596, 598, 604, 607, 615.) One report dated November 18, 2008 indicated that Plaintiff tested positive for straight leg raising in both a sitting and supine position to the right and the left, and the same report noted "significant deterioration of function" and "active neurological deficits." (AR 602-03.) Given the continued persistence of Plaintiff's symptoms and restrictions as documented by these records, they cannot reasonably be interpreted as constituting substantial evidence to support the conclusion that Plaintiff was no longer disabled after April 2006. The Court also finds that ALJ Radensky's conclusion that Plaintiff's treatment was conservative is not supported by substantial evidence. (AR 449.) Plaintiff's

---

[7] The Commissioner claims that the cane was prescribed "at Plaintiff's request, due to Plaintiff's uncorroborated claims of right leg weakness." (JS at 25.) There is no indication in the report that Plaintiff himself requested the cane. The report simply reads, "The patient indicates that occasionally he feels like his right leg is giving out, causing him some near falls. We need to prevent any falls or further problems. Therefore, it's felt that he would benefit from use of a cane for ambulation." (AR 436.)

11

treatment includes taking Norco, Orudis, Prilosec, Zanaflex, Lyrica, and using Lidoderm patches. (AR 478.) At the hearing, even Dr. Lorber agreed that the prescriptions could be a sign that the treating physician believes Plaintiff suffers from significant pain, and conceded that the drugs are generally used for more than moderate pain. (AR 477-78.) The record indicates that throughout September 2007 to September 2009, Plaintiff's medication largely stayed the same; there is no indication, however, that the treatment was necessarily conservative.[8] (See AR 596-616.)

The Commissioner argues that any deterioration in Plaintiff's condition after April 6, 2006 was brought on by his own failure to attend physical therapy. (JS at 24.) Although Plaintiff failed to attend physical therapy in the fall of 2006, Plaintiff cannot be faulted for this because the record establishes that he did not attend because he did not have any transportation. (AR 421.) In fact, once a transportation authorization was issued, Plaintiff did attend physical therapy, noting that it improved his symptoms. (AR 412.) However, even with the help of physical therapy, Dr. Haider's notes continue to detail persistent pain, limited movement, and antalgic gait, among other symptoms. (See AR 596-616.) The record clearly shows that Plaintiff's condition persisted in spite of physical therapy and medication. Again, although Plaintiff may have obtained some relief from physical therapy and medication (see, e.g., AR 412,

---

[8] The Court notes that Dr. Haider did call the prescription of medications "conservative" in one report. (AR 598.) The Court does not find this dispositive given Dr. Lorber's testimony about the health circumstances under which these drugs are prescribed, and the fact that Dr. Haider ordered an MRI after significant deterioration in function. (AR 600.) The Court also adds to its analysis of whether Plaintiff's treatment was conservative in analyzing Plaintiff's third claim below.

12

596), this fails to answer the requisite question of whether Plaintiff's condition improved with respect to his ability to work.

In conclusion, the Court finds that ALJ Radensky erred by concluding that Plaintiff was not disabled after April 6, 2006, as this conclusion is not supported by substantial evidence.

### III

### **THE ALJ IMPROPERLY CONSIDERED PLAINTIFF'S TESTIMONY**

Plaintiff's third argument takes issue with the ALJ's conclusion that Plaintiff's testimony at the hearing was not entirely credible. (See JS at 27-33.) In particular, Plaintiff argues that ALJ Radensky's summary of Plaintiff's daily activities does not rise to the level of full time activity at any level of exertion, so his reasoning is legally insufficient. (JS at 33.) In response, the Commissioner asserts that the ALJ properly devalued Plaintiff's credibility based on a lack of objective medical evidence, Plaintiff's activities of daily living, inconsistencies between Plaintiff's testimony and his conduct, and Plaintiff's conservative treatment.[9] (JS at 35-37.)

The Court finds that although ALJ Radensky used seemingly permissible factors to explain why he devaluated Plaintiff's credibility, he did so without considering the record as a whole.

---

[9] ALJ Radensky's other reasons for devaluing Plaintiff's credibility are unavailing because they are not probative of disability. Some of them fall outside of the post-April 2006 time period, including the fact that Plaintiff reported progress after his first surgery, that he underwent vocational rehabilitation, and that he was cleared for light work. (See AR 449.) It is immaterial, too, that Dr. Haider found Plaintiff "permanent and stationary" (AR 449), because all this means is maximal medical improvement without substantial change expected. 8 C.C.R. § 10116.9.

Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

Subjective complaints of pain in excess of what an impairment would normally be expected to produce are subject to credibility assessment by an ALJ. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001). In order to find that a claimant's subjective complaints are not credible, an ALJ "must specifically make findings that support this conclusion," Bunnell, 947 F.2d at 345, and provide "clear and convincing reasons." Rollins, 261 F.3d at 857.

First, ALJ Radensky devalued Plaintiff's credibility because he found the objective medical evidence did not comport with Plaintiff's testimony regarding his pain and limitations. Although a lack of objective evidence, standing alone, is insufficient to reject subjective complaints, it is, nevertheless, one of the considerations. Bunnell, 947 F.2d at 345. Objective medical evidence, particularly Dr. Haider's finding on November 18, 2008 of active neurological deficits and his finding of radicular symptoms on May 5, 2009, actually helps substantiate Plaintiff's pain testimony. (See AR 602, 598.)

Second, the ALJ depreciated Plaintiff's testimony because he felt that Plaintiff's daily activities demonstrated an ability to work. (AR 15). Daily activities are a permissible factor in considering a claimant's credibility. See, e.g., Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). ALJ Radensky noted that Plaintiff drove to doctor's appointments, was able to microwave meals, and cleaned up after himself. (AR 449.) He also cited to Plaintiff's capacity to sit for an hour at one time and for several hours in one day, to stand for thirty minutes, to and lift a gallon of milk. (AR 449.) However, as Plaintiff persuasively argues, ALJ Radensky failed to explain how

driving what potentially is a short distance, microwaving meals, and cleaning up after oneself translates into the ability to work full-time at a sedentary range of exertion. (JS at 30.) In addition, Plaintiff's capacity to sit for an hour comes from his testimony that he watched television for that time range, but he also testified that he watched television in a recliner because he got "tired just like this or just sitting down straight up." (AR 489.) Standing for thirty minutes and carrying a gallon of milk are also not necessarily dispositive on the issue of disability. See, e.g., Fair, 885 F.2d at 603 (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace").[10]

Third, ALJ Radensky gave weight to a seeming inconsistency: that Plaintiff testified to using an ambulatory device but did not bring one to the hearing. (AR 449.) While an ALJ can consider inconsistencies when evaluating a claimant's credibility, ALJ Radensky took these statements out of context. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (including inconsistencies as an ordinary technique of credibility evaluation). Plaintiff explained that he used the walker for longer distances, usually more than five blocks, or when he was going to exercise. (AR 479-80.)

Finally, the ALJ characterized Plaintiff's treatment history as conservative. Conservative or infrequent treatment may be used by the ALJ to refute allegations of disabling pain. See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995). Here, the Court explicitly notes that Plaintiff's full treatment history includes multiple

---

[10] The Court also finds persuasive the daily activities that Plaintiff testified he did not engage in, including grocery shopping, laundry, and attending religious services. (AR 485-88.)

decompression and fusion operations, hernia repair, hardware removal, MRI tests and discograms, all of which cannot reasonably be classified as "conservative." (AR 163-169, 289-90, 277-278, 186, 216, 217, 227-28).

In conclusion, ALJ Radensky did not provide clear and convincing reasons for devaluating Plaintiff's credibility.

## **CONCLUSION**

For the foregoing reasons, the decision of the ALJ is **REVERSED**. The matter is **REMANDED** for further hearing.

**IT IS SO ORDERED.**

DATED: June 25, 2013          /s/
                              VICTOR B. KENTON
                              UNITED STATES MAGISTRATE JUDGE